UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J.D. FIELDS & CO., INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-4186 |
| | § | |
| SHORING ENGINEERS, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before this court is defendant Shoring Engineers's ("Shoring") motion to dismiss for lack of personal jurisdiction and improper venue (Dkt. 5). Plaintiff J.D. Fields and Company, Inc. ("J.D. Fields") responded. Dkt. 12. Shoring replied, and J.D. Fields filed a sur-reply. Dkt. 14 (Shoring's reply); Dkt. 15-1 (J.D. Field's sur-reply). Having considered the motions, responses, replies, and applicable law, the court is of the opinion that the motion to dismiss (Dkt. 5) should be DENIED.

### I. BACKGROUND

This is a breach of contract case. Shoring is incorporated and has its principal place of business in California, while J.D. Fields is incorporated and has its principle place of business in Texas. Dkt. 1 at 2. In January 2017, Shoring requested that J.D. Fields locate and supply specially fabricated steel piling for a project at the Los Angeles International Airport. Dkt. 1-1 at 3; Dkt. 5 at 5. J.D. Fields subsequently sent Shoring a price quote for the piling on company letterhead, which included J.D. Fields's Houston office address. Dkt. 1-1 at 4; Dkt. 5 at 5. The price quote expressly stated that "[o]nly a fully executed purchase agreement shall be binding." Dkt. 12-4 at 2.

On March 20, 2017, a Shoring representative emailed J.D. Fields and asked what Shoring would need to do for J.D. Fields to "hold that pipe." Dkt. 12-3 at 3. A J.D. Fields representative responded that if Shoring replied to the quote with a signature, J.D. Fields would hold the piling until Shoring produced a formal purchase order. *Id.* A Shoring representative signed the quote, wrote "ACCEPTED" on the document, and sent the document back to J.D. Fields. Dkt. 12-4. However, Shoring never executed a formal purchase order.

Shortly after receiving the signed quote, J.D. Fields sent Shoring a credit application. *Id.* Shoring executed the credit application, also on J.D. Fields letterhead, and returned the application to J.D. Fields. Dkt. 5 at 27. On March 24, J.D. Fields notified Shoring that Shoring's credit application had been approved. Dkt. 12-5 at 2. The credit notification included J.D. Fields's General Terms and Conditions of Sale ("GTCs"). *Id.* The GTCs expressly provided, in bold type, that "every sale by [J.D. Fields] shall in every case be subject to these terms and conditions to the exclusion of any other terms." *Id.* at 3. The GTCs also included the following forum-selection clause:

> 2.1 CHOICE OF FORUM
> All actions or proceedings either directly or indirectly arising from or related to this contract or transaction, regardless of whether grounded in contract, tort, or any other legal theory, **shall be brought only in State or Federal Court in Harris County in the State of Texas**, and Buyer hereby consents and submits to the exclusive jurisdiction and venue of such courts for the purpose of such actions or proceedings.

*Id.* (emphasis added). On April 13, a J.D. Fields representative emailed Shoring on same email chain that Shoring used to send the March 20 signed quote. Dkt. 24-8 at 2. J.D. Fields asked if Shoring was "still good on" the pipe for which Shoring had previously signed. Dkt. 12-2 at 4; Dkt. 24-8 at 2. Shoring replied that "[y]es, the other pipe is still good." Dkt. 12-2 at 4; Dkt. 24-8 at 2.

2

On April 19, J.D. Fields paid a third-party distributor, JCD International Services ("JCD"), approximately $193,000 as a partial up-front payment to fill Shoring's order. Dkt. 12-2 at 5; Dkt. 24-2 at 4.

In the following months, Shoring made multiple requests for changes to the order and provided fabrication instructions in furtherance of the contract. Dkt. 12 at 11. However, in July 2017, Shoring informed J.D. Fields that Shoring was repudiating the contract and would not take delivery of the pilings as previously agreed. *Id.* To date, Shoring has paid J.D. Fields $50,019 in damages. Dkt. 12-2 at 5. J.D. Fields alleges that this payment only covers a "fraction" of its damages. *Id.*

J.D. Fields filed suit in the 269th Judicial District Court of Harris County, Texas, alleging breach of contract and promissory estoppel. Dkt. 1. Shoring removed the action to this court. *Id.* Shoring then filed a Rule 12(b) motion to dismiss for lack of personal jurisdiction and improper venue. Dkt. 5.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

A court must dismiss an action when it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the resident plaintiff has the burden of establishing personal jurisdiction over the non-resident. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). When a district court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdiction, and the court may consider the entire contents of the record, including affidavits. *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002). "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the

facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). However, "the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

**B. Rule 12(b)(3) Motion to Dismiss for Improper Venue**

The Federal Rules of Civil Procedure authorize a court to dismiss an action when venue in that court is improper. *See* Fed. R. Civ. P. 12(b)(3). Once a defendant challenges venue, the plaintiff has the burden to prove that venue in that court is proper. *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 897 (S.D. Tex. 2013) (Harmon, J.). When deciding a Rule 12(b)(3) motion, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). However, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex. rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448 (5th Cir. 2008) (Dennis, J., dissenting)).

### III. ANALYSIS

**A. Contract Formation and Interpretation**

As a threshold matter, the parties disagree as to whether the GTCs—and therefore the forum-selection clause—became part of the contract. Shoring contends that it never agreed to the GTCs, and that therefore the forum-selection clause does not function as Shoring's consent to jurisdiction in Texas. Dkt. 5 at 7. Without the forum-selection clause, Shoring argues that this court lacks

4

personal jurisdiction and is an improper venue. *Id.* at 1. Accordingly, Shoring requests that the court dismiss the case entirely or transfer the case to the Central District of California. *Id.* at 10.

### 1. *Whether the Clause Became Part of the Contract*

The parties agree that a contract existed. Dkt. 5 at 7; Dkt. 12 at 14. However, the parties disagree as to whether the GTCs were part of the contract. Shoring argues that the parties entered into a binding contract on March 20, when Shoring signed and returned J.D. Fields's price quote. Dkt. 14 at 3. Thus, Shoring contends that the GTCs—sent March 24—were merely proposals for alterations to the contract under UCC § 2-207. Dkt. 5 at 6–7; Tex. Bus. & Comm. Code Ann. § 2.207. However, J.D. Fields argues that the parties did not have a binding contract until April 13, when Shoring confirmed that it still wished to proceed with the pipe order. Dkt. 12 at 14. Because J.D. Fields had previously sent the GTCs to Shoring, and Shoring's April 13 acceptance was unconditional, J.D. Fields contends that the GTCs became part of the contract. *Id.*

Here, because the court is sitting in diversity, state substantive law applies; because the contract at issue is for the sale of goods, the Uniform Commercial Code ("UCC") applies.[1] *J.D. Fields & Co. v. U.S. Steel Int'l, Inc.*, 426 F. App'x 271, 276 (5th Cir. 2011) (hereinafter *U.S. Steel Int'l*). Under the UCC, "[a] contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a

---

[1]Both parties cite Texas contract law in their briefing, but Shoring does not directly concede that Texas law applies. *See, e.g.*, Dkt. 5 at 6; Dkt. 12 at 14. However, because the Texas UCC is very similar to the California UCC, the court will apply Texas law. *Compare* Tex. Bus. & Comm. Code Ann. § 2.207 *with* Cal. Comm. Code § 2207; *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016) (noting that in similar circumstances, a court may eschew a full choice-of-law analysis "when neither party contends that any distinctive feature of the relevant substantive law decides the dispute").

contract."² *Id.* (citing Tex. Bus. & Com. Code Ann. §§ 2.201–.210). The UCC "supplements" the four basic elements of an enforceable contract: (1) offer; (2) acceptance; (3) a "meeting of the minds" as to subject matter and essential terms; and (4) consideration or mutuality of obligation. *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 846 (S.D. Tex. 2011) (Harmon, J.). Thus, contract formation "hinge[s] on the existence of an acceptable offer." *U.S. Steel Int'l*, 426 F. App'x at 276 (citing *Crest Ridge Constr. Grp., Inc. v. Newcourt Inc.*, 78 F.3d 146, 152 (5th Cir. 1996) (Benavides, J., concurring)). Although the UCC does not define "offer," the Fifth Circuit has held that an offer is "an act that leads the offeree reasonably to believe that assent (*i.e.*, acceptance) will conclude the deal." *Axelson, Inc. v. McEvoy-Willis*, 7 F.3d 1230, 1232–33 (5th Cir. 1993).

A price quote, such as the one Shoring signed on March 20, can sometimes operate as an offer. *U.S. Steel Int'l*, 426 F. App'x at 276. However, "it must reasonably appear from the price quote that assent to the quote is all that is needed" to form a binding contract. *Crest Ridge*, 78 F.3d at 152 (Benavides, J., concurring); *see also Axelson, Inc.*, 7 F.3d at 1232–33. Here, Shoring could not have reasonably believed that assent to the price quote would form a contract for the sale of the piling. The quote itself states that it is "non-binding" and that "[o]nly a fully executed purchase agreement shall be binding." Dkt. 12-4 at 2. Moreover, J.D. Fields's email correspondence made clear that Shoring's signature would only "hold" the pilings until Shoring "[got] a [purchase order] written up." Dkt. 12-3 at 3. Given J.D. Fields's repeated statements that a purchase order was necessary to conclude the deal, no one in Shoring's position could have reasonably believed that

---

²The parties' contract is also within the statute of frauds because it is for the sale of goods for the price of $500 or more. *See* Tex. Bus. & Comm. Code Ann. § 2.201(a). However, the statute of frauds is primarily concerned with the existence of a contract. Even material terms need not be part of a writing for the writing to satisfy the statute, as long as the writing contains a quantity term. *See* § 2.201(a) cmt. 1. Here, the parties do not dispute the existence or quantity term of the contract.

6

signing the price quote would form a contract for the sale of the piling. *See U.S. Steel Int'l*, 426 F. App'x at 280 (reasoning that a price quote was an offer, but only because the quote was "void of any conditional language" and "did not limit acceptance to a specified manner"). Thus, as a matter of law, J.D. Fields's March 20 price quote was not an offer.

The earliest communication that could have been an offer occurred on April 13, when J.D. Fields followed up with Shoring to confirm that Shoring was still "good" for the pipe. Dkt. 12-2 at 4; Dkt. 24-8 at 2. J.D. Fields's April 13 email, unlike its previous communications, did not require a purchase order or otherwise limit acceptance to a particular method. *See U.S. Steel Int'l*, 426 F. App'x at 280. Moreover, the parties had previously agreed on the details of the transaction, including price and quantity. Dkt. 12-4. Under these circumstances, an offeree in Shoring's position could have reasonably believed that assent to J.D. Fields's email would conclude the deal.[3] *See Axelson, Inc.*, 7 F.3d at 1232–33. Thus, the earliest date the parties could have had a contract for the sale of pipe was April 13.

Further, the GTCs were part of J.D. Fields's offer. Shoring received the GTCs on March 24, well before the parties entered the contract. Dkt. 12-5. The GTCs expressly stated that "every sale by [J.D. Fields] shall in every case be subject to these terms and conditions" and that they displaced any previously offered terms. *Id.* at 3. The GTCs also expressly objected to any additional terms proposed by the buyer under UCC § 2-207. *Id.* Thus, J.D. Fields made clear to Shoring that any offer from J.D. Fields would be subject to the GTCs. However, Shoring failed to object to the GTCs and unqualifiedly accepted J.D. Fields's April 13 offer. Dkt. 12-2 at 4; Dkt. 24-8 at 2. Taking the

---

[3]It appears that Shoring also subjectively believed that the deal had been concluded. Although Shoring was extensively involved in the pipe's production from April to July, Shoring never issued a formal purchase order in accordance with the terms of the March 20 price quote. *See* Dkt. 12 at 11.

record as a whole, the court concludes that the parties' communications demonstrate an objective "meeting of the minds" with regard to GTCs, regardless of whether Shoring subjectively assented. *See Omni USA, Inc.*, 798 F. Supp. 2d at 846; *see also* In re *Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012) ("The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." (quotations omitted)). Thus, the GTCs—and therefore the forum-selection clause—are part of the parties' contract.[4]

### 2. *Whether the Clause Is Mandatory*

Second, Shoring contends that even if the GTCs apply, the forum-selection clause is only permissive and does not mandate exclusive jurisdiction in Texas. Dkt. 14 at 3–4. However, the forum-selection clause states that suit "*shall* be brought *only* in State or Federal Court in Harris County in the State of Texas." Dkt. 12-5 at 3 (emphasis added). The clause also provides that buyers consent to the "*exclusive* jurisdiction and venue" of the selected courts. *Id.* (emphasis added). The plain language of the clause "demonstrate[s] the parties' intent to make that jurisdiction exclusive." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *see J.D. Fields v. Nucor-Yamato Steel Co.*, No. H-12-1918, 2012 WL 6042219, at *2, *4 (S.D. Tex. Dec. 4, 2012) (Lake, J.) (holding that a forum-selection clause was mandatory when the clause provided that the buyer consented to the "exclusive jurisdiction" of the selected state); *see also Von*

---

[4]Shoring's primary argument is that forum-selection clauses are material, and therefore require express assent to become part of a contract under UCC § 2-207. Dkt. 5 at 6; Tex. Bus. & Comm. Code Ann. § 2.207(b)(2). However, § 2-207 applies only to material terms that are proposed after a contract has formed. *See* Tex. Bus. & Comm. Code Ann. § 2.207(a). Because the GTCs were part of J.D. Fields's initial offer, § 2-207 does not apply.

8

*Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) (collecting cases). Thus, to the extent the forum selection clause controls, it mandates litigation in Texas.

**B. Personal Jurisdiction and Venue**

Although the mandatory forum-selection clause is part of the parties' contract, the question of its enforceability remains.[5]

Constitutional due process requires a court to have personal jurisdiction over the parties before it. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945). However, "the personal jurisdiction requirement is a waivable right," and parties may consent to the jurisdiction of a court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174 (1985); *see also Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03, 102 S. Ct. 2099 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."). Forum-selection clauses are one method of consent. When forum-selection clauses are "not unreasonable and unjust, their enforcement does not offend due process." *Burger King Corp.*, 471 U.S. at 472 n.14 (citations and quotations omitted).

Venue, unlike personal jurisdiction, is a statutory requirement. *See* 28 U.S.C. § 1391(a) (providing venue rules in diversity cases). However, parties may consent to a venue that is not expressly authorized by statute. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63, 134 S. Ct. 568 (2013) (emphasizing that a valid forum-selection clause will determine venue in "all but the most exceptional cases" (citations and quotations omitted)). "It is well-settled [law] that venue is proper in any district agreed to under a forum selection clause."

---

[5]In a diversity case, federal law governs whether a forum-selection clause is enforceable. *Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997).

*WorldVentures Holdings, LLC v. Mavie*, No. 4:18-CV-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018); *see also id.* (collecting cases).

In the Fifth Circuit, a forum-selection clause in a written contract is "*prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995). A forum-selection clause is "potentially" unreasonable if :

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S. Ct. 1522 (1991), and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13, 15, 92 S. Ct. 1907 (1972)); *see also Al Copeland Investments, LLC v. First Specialty Insurance Corp.*, 884 F.3d 540, 543 (5th Cir. 2018). The party challenging the enforceability of a forum selection clause "bears a heavy burden of proof." *Id.* (quotations omitted) (citing *M/S Bremen*, 407 U.S. at 17).

Here, Shoring has failed to carry its heavy burden of showing that the forum-selection clause is unreasonable. Shoring does not address any of the *Haynsworth* factors.[6] Rather, Shoring argues

---

[6]Shoring appears to argue that the *Haynsworth* decision no longer governs after the Supreme Court's subsequent ruling in *Atlantic Marine*, 571 U.S. 49 (2013). Dkt. 14 at 10. However, the Fifth Circuit has continued to apply the *Haynsworth* factors in post-*Atlantic Marine* decisions. *See, e.g.*, *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 301 (5th Cir. 2016). Rather than undermining *Haynsworth*, *Atlantic Marine* reinforces the central holding of *Haynsworth* that forum-selection clauses are enforceable absent unusual circumstances. *Atl. Marine*, 571 U.S. at 63. While *Atlantic Marine* does establish a new framework for assessing certain motions to transfer venue, that framework does not

10

that it lacks minimum contacts with Texas and that therefore this court cannot exercise jurisdiction. Dkt. 14 at 7–9. Shoring also argues that venue is improper under 28 U.S.C. §1391. *Id.* at 9–10. However, the court need not conduct traditional jurisdiction or venue analyses when the parties have consented to litigation in a given forum. *See supra* pp. 8–9. Shoring agreed to litigate in Texas, and Shoring has not carried its burden of showing that the forum-selection clause is unreasonable. The court must therefore enforce the parties' bargained-for contract, including the forum-selection clause.

### IV. CONCLUSION

Shoring's motion to dismiss for lack of personal jurisdiction and improper venue (Dkt. 5) is DENIED. J.D. Fields's pending motion for leave to file a sur-reply (Dkt. 15) is GRANTED.

Signed at Houston, Texas on June 13, 2019.

_____
Gray H. Miller
Senior United States District Judge

---

apply here. *See id.* at 52 (holding that a motion to transfer under 28 U.S.C. § 1404(a), rather than a Rule 12(b)(3) motion, is the correct procedural vehicle for challenging venue when the plaintiff's chosen venue is a proper venue under the statute but is not within the parties' agreed-to forum selection clause).